IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| FOCUS DIRECT, INC. § | |
| § | |
| v. § | C.A. NO. SA-02-CA-1175-DKT-IV |
| § | |
| GARY SEKULOW, AMERICAN § | |
| CENTER FOR LAW AND JUSTICE, § | |
| WILLIAM SIDEBOTTOM, CHRISTIAN § | |
| ADVOCATES SERVING EVANGELISM, § | |
| INC., and M.G. "PAT" ROBERTSON § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

### A. Parties

1.  Plaintiff FOCUS Direct, Inc. ("FOCUS") is a Texas corporation with its principal place of business in Bexar County, Texas.

2.  Defendant American Center for Law and Justice ("ACLJ") is a Virginia non-profit corporation doing business in Texas. It has been served with process and answered herein.

3.  Defendant William G. Sidebottom ("Sidebottom") is an individual residing in Virginia sometimes doing business as InterAct Response Communications ("IRC"). He has been served with process and answered herein.

4.  Defendant M.G. "Pat" Robertson ("Dr. Robertson") is the founder and president of the American Center for Law and Justice. Dr. Robertson resides at 977 Centerville Turnpike, Virginia Beach, VA 23463. He has been served with process and answered herein.

5.  Defendant Christian Advocates Serving Evangelism, Inc., d/b/a American Center for Law and Justice ("CASE"), is a California corporation with its principal place of business in Atlanta, Georgia. CASE is doing business in the State of Texas but does not have a registered agent for service in Texas. CASE is an affiliate of the American Center for Law and Justice and



they will sometimes jointly be referred to as "ACLJ." CASE has been served with process and answered herein.

6. Defendant Gary M. Sekulow ("Sekulow") is Chief Financial Officer of ACLJ and CASE and participated in fraudulent misrepresentations and schemes to defraud FOCUS. Part of the fraud took place in Texas. Sekulow has been served with process and answered herein.

### B. Jurisdiction and Venue

7. The court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1) because the suit is between citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

8. Venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claim occurred here and because at least one of the Defendants is subject to the personal jurisdiction of this judicial district.

### C. Background

9. Plaintiff FOCUS is in the direct mail manufacturing business. It provides print and mailing services to a large number of clients throughout the United States. Its production facility and offices are located in San Antonio, Texas.

10. Defendant ACLJ is a Virginia corporation, which, according to its website, is the nation's preeminent public interest law firm and educational organization. CASE is an ACLJ affiliate located in Atlanta, Georgia.

11. Defendant Robertson was the Founder of ACLJ. He is also the Founder of the Christian Broadcasting Network, the Christian Coalition of America, and is an author and speaker on Christian precepts. In his speeches, press releases, Internet sites, and writings, Dr.

2

Robertson holds himself out as a follower of the Ten Commandments and Judeo-Christian principles. He encourages everyone to act with integrity in their personal and professional lives.

12. FOCUS began performing services for ACLJ prior to 1995. During the relevant time period from 1995-2001, Dr. Robertson, founder and board member of ACLJ, claimed that his organization had the highest ethical standards and would use its precepts of honesty and integrity to influence the political and judicial process. One of the major reasons that FOCUS entered into a relationship with ACLJ was due to its affiliation with and stature of its founder, Dr. Robertson. Upon information and belief, Dr. Robertson in his capacity as a board member was aware of ACLJ's financial obligations, fund raising activities, prospecting operations for new donors, public statements, legal activities and provided direction on these aspects of ACLJ's operations.

13. In July 1995, ACLJ and FOCUS entered into a Letter of Agreement (the "'95 Agreement") to govern work performed by FOCUS. A copy of the '95 Agreement is attached as Exhibit 1. Under the '95 Agreement, FOCUS was to provide a prospecting program, as well as mailing strategies and creative services. The prospecting program was designed to achieve various objectives for ACLJ including: (1) the acquisition and creation of a "new donor" database; (2) stimulation of financial donations to ACLJ; and (3) publicity and education about ACLJ's mission.

14. The term of the '95 Agreement began on July 17, 1995 and was to continue until all obligations contained in the Agreement were satisfied by all parties, or until the Agreement was terminated by mutual agreement or by one party after 45 days advance written notice.

15. Under the '95 Agreement, FOCUS agreed to provide ACLJ a direct response name acquisition program. ACLJ agreed to provide "internal cage" services. The internal cage

3

was to serve as a unique bank account or depository for all donations from persons contacted through the prospecting mail services performed by FOCUS. The funds were to be exclusively reserved for payment of expenses for the prospecting activities. Payments were to be made to FOCUS on a regular basis but not less often than every 14 days. To keep track of the funds, ACLJ was to create a "Prospecting Report Form" which was to include data on activity levels, expenses, incomes, and other relevant matters.

16. Money from the internal cage was to be set aside for payment to vendors. However, FOCUS agreed only to wait up to six (6) months for payments from the cage. When full payment on invoices was not made within the 6 month period, "[the] invoice became immediately due and payable by ACLJ" to FOCUS. Any unpaid invoices, or portions thereof, that were not paid from the cage were to be paid from ACLJ's operating funds immediately after aging six (6) months from the invoice date.

17. The parties provided for a "final billing" upon the event of ACLJ's suspension of operations or if it no longer mailed to house file members. In that event, FOCUS could submit a "final bill" for services rendered according to the schedule of charges agreed upon for already accomplished mail projects. ACLJ was then responsible for paying such bill.

18. ACLJ's orders for direct mail products and services under the '95 Agreement were placed and fulfilled by FOCUS as agreed upon by all parties in a timely and professional manner. There were no disputes with ACLJ as to the quality or timeliness of FOCUS' production of the ACLJ products.

19. Beginning in the late 1990's, ACLJ requested FOCUS perform services for its affiliate CASE. FOCUS performed services and billed CASE in accordance with the '95 Agreement. A separate account was set up for CASE pursuant to ACLJ's request.

4

20. According to the '95 Agreement, Defendant William Sidebottom served as the "broker" for the work FOCUS received from ACLJ. As the broker, Sidebottom was responsible for ranking, prioritizing and designating FOCUS invoices for payment, and he owed FOCUS a duty to act with utmost good faith, loyalty and candor and to fully disclose and not conceal from FOCUS matters that might influence the performance of work by FOCUS for ACLJ. In exchange for his services, Sidebottom received commissions from FOCUS on the work FOCUS performed for ACLJ.

21. Sidebottom also acted as an agent for ACLJ. He approved the layout, art work and production strategies employed by FOCUS for ACLJ, and he signed purchase orders on behalf of ACLJ.

22. Beginning around 1999, ACLJ, Sekulow, Sidebottom and Dr. Robertson developed a fraudulent scheme to obtain additional work from FOCUS at a reduced rate or without having to pay for the work at all. For example, on November 15, 1999, Sidebottom and Sekulow entered into a Letter Agreement (the "'99 Agreement"). A copy of the '99 Agreement is attached as Exhibit 2. Under the terms of the '99 Agreement, Sidebottom became the coordinating vendor for ACLJ's direct mail prospecting program, and he and Sekulow agreed that ACLJ could establish a "Caged Direct Mail Prospecting" program ("Cage") for the receipt of all funds collected from any direct mail prospecting done by any vendor, including FOCUS. Sidebottom and Sekulow, with full knowledge of the '95 Agreement and without FOCUS' authorization, agreed to limit payments to FOCUS for work performed for ACLJ to only the monies received by the Cage. Upon information and belief, Dr. Robertson was consulted and approved the terms of the '99 Agreement.

064923.0024 SAN ANTONIO 326978 v1

23. Prior to December 1999, invoices for work performed by FOCUS for ACLJ were paid. Invoices after that time period were not regularly paid presumably because of the deceptively created '99 Agreement. ACLJ's orders for products and services continued to be honored by FOCUS under the terms of the '95 Agreement and were fulfilled by FOCUS as agreed upon by all parties in a timely and professional manner. There were no disputes from ACLJ as to the quality or timeliness of FOCUS' production of the ACLJ products.

24. The '99 Agreement also violated the United States Postal Service ("USPS") regulations for "cooperative mailing." Under those regulations, it is against the USPS rates and classification rules for a mail manufacturer and non-profit organization to use a non-profit postal rate where the payment to the mail manufacturer is directly and solely tied to the donations generated by the mail program. FOCUS has never entered into such an agreement with ACLJ, nor would it. In effect, the intention and actions of ACLJ, Sekulow, Sidebottom and Robertson were to force FOCUS into an illegal agreement.

25. From 1999 to 2002, Sidebottom, while acting as agent for ACLJ and broker for FOCUS, continued to solicit and approve work by FOCUS for ACLJ. In soliciting work from FOCUS, Sidebottom did not disclose to FOCUS that it would not be paid for its services by ACLJ in accordance with the '95 FOCUS Agreement. He also failed to disclose that FOCUS may not be paid at all for its services, if the Cage did not receive funds equal to or greater than the amounts owed to FOCUS. FOCUS was not a party to the '99 Agreement and did not perform any work under the terms of that Agreement..

26. In addition to collaborating on the '99 Agreement, upon information and belief, ACLJ, Sekulow, Sidebottom and Dr. Robertson developed a scheme to further alter the terms of the '95 Agreement and prevent FOCUS from being paid, by sending false account verification

6

statements to FOCUS. The statements, purportedly created in behalf of ACLJ's accountants altered and misrepresented amounts owed to FOCUS by ACLJ, as well the date on which the amounts were due and payable. For instance, in May 2001, Sekulow forwarded a statement to Barry Luff, Senior Sales Executive for FOCUS, asking Mr. Luff to confirm the accounts receivable from ACLJ. A copy of this letter is attached as Exhibit 3. In addition to the standard confirming language, the statement asked FOCUS to confirm that the outstanding amounts were not due for over a year. Sekulow and Sidebottom, who was specifically responsible under the '95 and '99 Agreements for tracking, prioritizing and timing the payment of FOCUS' invoices, knew that these statements were false and were a blatant attempt to further vary the terms of '95 Agreement. Upon information and belief, Dr. Robertson was aware and approved the issuance of the false account verification statements and the forgery of FOCUS' alleged response.

27.     FOCUS responded to the 2001 account verification statement by sending by facsimile transmission the verification statement without checking the "correct" box, indicating FOCUS did not approve of the new terms. Nevertheless, upon information and belief, Defendants ACLJ, Sekulow, Sidebottom and Robertson agreed to forge and change the statement by placing a check in the "correct" box and by adding initials, underlining and dates to the statement. This was confirmed by a subsequent document that FOCUS received by facsimile transmission from ACLJ, Sekulow and Sidebottom where the "correct" box was checked, dated and initialed "B.L.," inferring that Mr. Luff approved of the revised terms. These actions gave the appearance that FOCUS agreed the outstanding amount was not due for another year even though Mr. Luff did not indicate that this was correct and true, is not an officer of FOCUS and is not an authorized representative of FOCUS. A copy of the forged confirmation statement is attached as Exhibit 4.

28. In 2002, another misleading account verification statement was issued in another attempt to alter both the amount due FOCUS and the terms of the outstanding invoices. The 2002 account verification statement is attached as Exhibit 5. FOCUS, however, promptly sent a letter by both facsimile transmission and certified mail to KPMG informing them that the amount outstanding was incorrect and the overdue nature of the debt. A copy is attached as Exhibit 6. FOCUS has not received a response from KPMG.

## CAUSES OF ACTION

### I. SUIT ON ACCOUNT

29. FOCUS realleges and incorporates by reference the allegations contained above.

30. FOCUS kept a systematic record of the work performed and services provided to ACLJ and CASE. The parties agreed that ACLJ would pay the invoices it received within six (6) months. Payment has not been made. There is now a claim for liquidated money based upon these written invoices. According to Fred Lederman, President of FOCUS, the claim stated herein for $756,333.86 is true and correct and is due and owing and that all just and lawful offsets, payments, and credits have been allowed. The affidavit of Fred Lederman is attached hereto as Exhibit 7 and incorporated herein.

### II. BREACH OF CONTRACT

31. FOCUS realleges and incorporates by reference the allegations contained above.

32. In 1995, ACLJ and FOCUS entered into a contract wherein FOCUS agreed to provide goods and services to ACLJ, and ACLJ agreed to pay FOCUS for the goods and services provided. Pursuant to the '95 Agreement, FOCUS delivered goods and services to ACLJ and its affiliate CASE. By failing to pay FOCUS, ACLJ has not performed in accordance with and has

8

breached the '95 Agreement. There are amounts due and owing in excess of $756,333.86. All conditions precedent to the '95 Agreement have been performed

33. Defendant Sekulow and upon information and belief Defendant Robertson are jointly and severally liable for ACLJ's breach of the '95 Agreement and for payment of the amounts due and owing to FOCUS on the grounds that they used ACLJ as a sham to perpetrate an actual fraud on FOCUS. They knew that ACLJ was obligated under the '95 Agreement to pay FOCUS for products and services provided in connection with the prospecting mail program, and with the express purpose of preventing payment to FOCUS and avoiding the obligations under the '95 Agreement, Defendants Sekulow and upon information and belief Defendant Robertson knowingly and intentionally:

   a. Caused funds in the internal cage to be diverted and misappropriated for purposes other than to pay FOCUS invoices in accordance with the '95 Agreement;

   b. Arranged for the execution and did execute the illegal '99 Agreement with Defendant Sidebottom;

   c. Arranged for false account verification statements to be sent to FOCUS; and

   d. Caused an account verification statement, to which FOCUS objected, to be illegally altered to give the appearance that FOCUS consented to its terms.

## IV. FRAUDULENT CONCEALMENT

34. FOCUS realleges and incorporates by reference the allegations contained above.

35. When FOCUS sent out mailings to donors and potential donors on behalf of ACLJ requesting contributions, the money returned by such donors was to be deposited by ACLJ in a segregated "internal cage" account for the benefit of payments to FOCUS. Upon information and belief, ACLJ, Sekulow, and Robertson, instead of maintaining the cage as

9

agreed and using the money to pay FOCUS in the prescribed manner under the terms of the '95 Agreement, they knowingly and intentionally or negligently and with malice misdirected the money to fund other programs and to pay consultants and advisers other than FOCUS. ACLJ, Sekulow, and Robertson converted and misappropriated monies intended for FOCUS and concealed the misappropriation from FOCUS.

36. In addition, Defendants ACLJ, Sekulow and upon information and belief Robertson, in collaboration with Defendant Sidebottom, fraudulently concealed other activities from FOCUS in an attempt to avoid payment for prospecting services. They entered into the '99 Agreement without including FOCUS as a party to the Agreement and without telling FOCUS that the purpose of the Agreement was to void and eliminate the billing and payment procedures in the '95 Agreement.

37. Upon information and belief, they also sent by USPS mail and facsimile transmission false account verification statements to FOCUS in Texas and forged entries on the statements that they knew did not accurately reflect the parties' agreement.

38. FOCUS would not have continued to perform services for ACLJ in reliance on receipt of payments from the cage and ACLJ had it known that monies were being wrongfully diverted, that the '99 Agreement had been executed without including FOCUS as a party to the Areement, and that the account verification statements were being illegally altered. In this connection, ACLJ, Sekulow, Sidebottom and upon information and belief Dr. Robertson purported to have and did have superior knowledge concerning the subject matter of the transactions described above, and FOCUS justifiably relied on Defendants' superior knowledge to its detriment.

39. By reason of FOCUS's reliance on Defendants' superior knowledge and Defendants' fraudulent concealment of the material facts described above, FOCUS has been damaged in an amount in excess of $700,000.

40. FOCUS further alleges that because Defendants knew that the concealment of material facts was fraudulent and malicious, the law allows the imposition of exemplary damages. Accordingly, FOCUS requests that exemplary damages be awarded against Defendants in a sum within the jurisdictional limits of the Court.

## V. FRAUD

41. FOCUS realleges and incorporates by reference the allegations contained above.

42. In approximately 1996 and 1998, Fred Lederman, President of FOCUS, met with Pat Robertson to discuss additional business from FOCUS. During the meetings, Mr. Lederman informed Dr. Robertson of the amounts for work done by FOCUS for ACLJ that were outstanding and overdue for payment. Dr. Robertson told Mr. Lederman that FOCUS need not worry about the overdue amounts because ACLJ was part of Robertson's "family" and they had money to pay the outstanding indebtedness.

43. Dr. Robertson knew, because of his reputation, Mr. Lederman would rely on his representations, and Mr. Lederman and FOCUS did in fact rely on Dr. Robertson's representations when FOCUS subsequently performed more services for ACLJ and CASE.

44. Upon information and belief, Dr. Robertson, as a board member, knew that the outstanding indebtedness owed by ACLJ and CASE would not be paid as promised. Upon information and belief, Dr. Robertson also knew, approved and directed the creation of the '99 Agreement and the illegally altered account verification statements.

11

45. By reason of FOCUS's reliance on Dr. Robertson's fraudulent representations, FOCUS has been damaged in an amount over $700,000. FOCUS is also entitled to an award of exemplary damages because Defendant M.G. "Pat" Robertson knew that his representations were false at the time they were made and were malicious.

## VI. CONSPIRACY TO DEFRAUD

46. FOCUS realleges and incorporates by reference the allegations contained above.

47. Defendants ACLJ, Sekulow, Sidebottom and upon information and belief Robertson acted together in a combination and conspiracy to carry out the acts alleged above, including the improper distribution of the funds in the Cage, the execution of the '99 Agreement, and the submission and creation of false and illegally altered account verification statements.

48. In carrying out the conspiracy, these Defendants unlawfully withheld payments for services performed by FOCUS for ACLJ and CASE in breach of the parties' '95 Agreement.

49. As a direct and proximate result of the Defendants' unlawful combination and conspiracy, FOCUS has suffered and will continue to suffer damages in an amount in excess of $700,000.

50. The Defendants' conspiracy was willful and intentional and was carried out with the intent to benefit from the wrongful failure to pay FOCUS for services performed for ACLJ. FOCUS seeks exemplary damages from ACLJ, Sekulow, Sidebottom and Robertson to the extent permitted by Texas law.

## V. BREACH OF FIDUCIARY DUTY

51. FOCUS realleges and incorporates by reference the allegations contained above.

52. Defendant William G. Sidebottom at all relevant times was the broker for FOCUS. Accordingly, he occupied a fiduciary position and owed FOCUS a duty of loyalty, candor and good faith. Among other things, Sidebottom was obligated to disclose to and not conceal from FOCUS facts that might influence the performance of work by FOCUS for ACLJ, such as plans to prevent the payment of invoices for work completed by FOCUS.

53. Sidebottom facilitated and caused the non-payment of FOCUS' invoices by entering into the '99 Agreement, and upon information and belief, by conspiring with ACLJ, Sekulow and Robertson to alter the terms of the '95 Agreement with the false account verification statements.

54. As a direct and proximate result of Sidebottom's breaches of his fiduciary duty to FOCUS, FOCUS has suffered and will continue to suffer damages in an amount in excess of $700,000.

55. These breaches of fiduciary duty to FOCUS were committed knowingly, were willful and intentional, and were grossly negligent or malicious. FOCUS also seeks exemplary damages to the extent permitted by Texas law.

## V. ATTORNEYS' FEES

56. Pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code, and the Agreement, FOCUS is entitled to the recovery of attorney's fees. In order to pursue this action, FOCUS retained the law firm of Akin, Gump, Strauss, Hauer & Feld, L.L.P. and agreed to pay reasonable fees. FOCUS seeks recovery of the fees required to obtain payment from ACLJ.

## VI. INTEREST

57.	Pursuant to the invoices provided by FOCUS, ACLJ agreed to pay 1.5% per month interest for amounts outstanding over six (6) months from the date of invoice. Therefore, FOCUS is entitled to its agreed upon interest rate on the principal balance outstanding.

## VII. PRAYER

58.	Plaintiff prays that Defendants ACLJ, CASE, Robertson, Sekulow and Sidebottom be cited to appear and that the Court grant Plaintiff the following relief:

   a. Judgment in the amount of $756,333.86 plus interest ;

   b. Plaintiff's attorneys fees as allowed by law;

   c. Punitive or exemplary damages as allowed by law;

   d. Costs of court; and

   e. All other relief to which Plaintiff is entitled.

> AKIN GUMP STRAUSS HAUER & FELD LLP
> 300 Convent Street, Suite 1500
> San Antonio, Texas 78205
> Telephone: (210) 281-7000
> Telecopier: (210) 224-2035
>
> _/s/ R. Laurence Macon_
> R. LAURENCE MACON
> State Bar No. 12787500
> MELANIE G. COWART
> State Bar No. 04920100
>
> ATTORNEYS FOR PLAINTIFF,
> FOCUS DIRECT, INC.

14

## CERTIFICATE OF SERVICE

     I hereby certify that a true and correct copy of the foregoing has been sent via first-class mail on this 23rd day of June 2003 to:

Thomas S. Brandon, Jr.
Whitaker, Chalk, Swindle & Sawyer, L.L.P.
3500 City Center Tower II
301 Commerce Street
Fort Worth, Texas 76102-4135

Andrew J. Ekonomou
Michael G. Lambros
Ekonomou Atkinson & Lambros, LLC
450 The Hurt Building
50 Hurt Plaza, S.E.
Atlanta, Georgia 30303

ATTORNEYS FOR DEFENDANTS, GARY SEKULOW, AMERICAN CENTER FOR LAW AND JUSTICE, CHRISTIAN ADVOCATES SERVING EVANGELISM, INC., AND M.G. "PAT" ROBERTSON

Kevin M. Young
Brendan K. McBride
Prichard, Hawkins & Young, L.L.P.
10101 Reunion Place, Suite 600
San Antonio, Texas 78216

ATTORNEYS FOR DEFENDANT, WILLIAM G. SIDEBOTTOM

_____
Melanie G. Cowart

064923 0024 SAN ANTONIO 326978 v1

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

## NOTICE OF DOCUMENT(S) NOT IMAGED
## AND CONTAINED IN CASE FILE

Civil Case No.        SA-02-CV-1175 RF

FOCUS DIRECT, INC.

VS.

GARY SEKULOW, et al.

Attachments to
Document #:          39

Description:         Plaintiff's First Amended Complaint

Filed By:            Plaintiff

File Date:           June 23, 2003

_____
DEPUTY CLERK-Kathy B. Cavazos